## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 3:20-CR-30166-SPM-1 |
| ) | |
| EMMITT T. TINER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DETENTION ORDER

SISON, Magistrate Judge:

### INTRODUCTION AND BACKGROUND

The Matter is before the Court on the Motion to Detain filed by the United States. (Doc. 7). Defendant was charged in a 54 count indictment with the following: Wire Fraud (Counts 1-2); Interstate Communication with Intent to Extort (Counts 3-6); Mail Fraud (Counts 7-8); Extortion (Counts 9-20); Health Care Fraud (Counts 21-35); Material Misstatement of a Fact to a Domestic Financial Institution (Count 36); Use of a Social Security Number of Another Person in Violation of the Law (Count 37); False Representation of a Social Security Number (Count 38); Aggravated Identity Theft (Count 39); Money Laundering (Counts 40-51); and Monetary Transactions in Criminally Derived Property (Counts 52-54). A detention hearing was held on November 25, 2020, wherein the United States presented evidence by proffer and argument and submitted various exhibits for the Court's consideration. Counsel for the Defendant likewise presented evidence by proffer and argument. Upon conclusion of the hearing, the Court

took the matter under submission due in part to the Court seeking clarification as to the appropriate burden of proof imposed on the United States. Having received that clarification from the parties and having carefully considered the arguments and evidence presented at the hearing, the Court concludes that the Defendant should be detained.

## ANALYSIS

### I. Preliminary Matters

The United States moved for detention on the grounds that the Defendant presented "a serious risk that [the Defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). In its motion, the United States also sought detention pursuant to 18 U.S.C. § 3142(f)(1) on the grounds that the Defendant is a flight risk and a danger to the community.[1] (Doc. 7). In order for the United States to obtain a detention hearing under (f)(1), the Defendant must have been charged with certain enumerated offenses in the Bail Reform Act that are considered to be particularly dangerous. *See United States v. Gibson*, 384 F. Supp. 3d 955, 960 (N.D. Ind. 2019). Here, Defendant is not charged with any of the enumerated offenses indicated in the Bail Reform Act. As a result, there is no presumption of detention applicable to this case.

---

[1] The United States primarily based its arguments on detention on the danger to the community and the danger posed by the Defendant to other witnesses. To the extent, that the United States was relying on risk of flight or non-appearance as a basis for detention, the Court rejects that argument. Based on the evidence presented, the Defendant does not appear to be a risk of flight or non-appearance.

The United States, however, can also seek detention under (f)(1) for any felony if such person has previously been convicted of two or more offenses that are either a crime of violence or a serious drug offense.  *See* 18 U.S.C. § 3142(f)(1)(D).  An examination of Defendant's criminal history reveals that this predicate is satisfied.  Defendant has a prior conviction for Unlawful Use of a Weapon in November 1986 and Felonious possession/use of a weapon/firearm in December 1996.  Defendant likewise has a Theft by Threat conviction in December 1996.

The determination of whether any of the above offenses qualify as a "crime of violence" under the Bail Reform Act requires a categorical approach referencing the elements of the offense; the factual circumstances of the prior convictions are irrelevant.  *See United States v. Bowers*, 432 F.3d 518, 521 (3rd Cir. 2005); *United States v. Singleton*, 182 F.3d 7, 11 (D.C. Cir. 1999).  Under this categorical approach, an offense qualifies as a crime of violence if there is a "substantial risk" that physical force may be used.  *United States v. Rogers*, 371 F.3d 1225, 1228-29 (10th Cir. 2004).  *See also United States v. Pereira*, 454 F. Supp. 2d 40, 43-44 (D. Mass. 2006)(finding that conviction under state law for possession of burglary tools for purpose of theft was an offense that involved substantial risk that physical force may be used against person or property and thus qualified as a crime of violence).

Based on an analysis of the elements of the Defendant's convictions under Illinois law, the Court concludes that at least two of the above offenses involve a "substantial risk" that physical force ***may be*** used against person or property.  For example, the possibility of force being used in the Theft by Threat conviction, 720 ILCS § 5/16-1(a)(3),

is self-evident as the definition of "threat" is an "expression of intention to inflict evil, injury, or damage." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 10th ed. (1993). It is likewise the same for the Defendant's Unlawful Use of a Weapon conviction as many of its provisions involve the possession of a weapon with the intent to use it against person or property. *See* 720 ILCS § 5/24-1.

Even if some of the above convictions do not qualify as a "crime of violence," Defendant still has a prior conviction for manufacturing/delivering cocaine in August 1990. The United States may seek detention under (f)(1) if there is also a prior drug offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(f)(1)(C). A prior state drug offense can fall into this category if the prior state drug offense would have been a federal offense "if a circumstance giving rise to federal jurisdiction had existed." 18 U.S.C. § 3142(f)(1)(D). The prior drug offense must go beyond mere possession as the Controlled Substances Act prohibits the manufacture, delivery, or possession with the intent to distribute. *See* 21 U.S.C. § 841(a)(1). Here, Defendant was convicted of the manufacture/delivery of 1-15 grams of cocaine in August 1990. If this prior state drug offense were a federal offense, it would have been punishable by a maximum of 20 years. *See* 21 U.S.C. § 841(b)(1)(C). As such, Defendant's prior drug conviction would also count as a predicate. Therefore, the Court concludes that the United States also properly brought its detention motion under (f)(1). As a consequence, in arriving at its detention decision, it is appropriate for the Court to consider the Defendant's prior criminal history as an indicator of whether he would be a danger to the community. *See, e.g., United States*

*v. Gibson*, 384 F. Supp. 3d 955, 963-964 (N.D. Ind. 2019)(noting that danger to community could only be used as a factor in determining detention if detention motion was properly brought under (f)(1) of the Bail Reform Act).

The Court must also consider the additional threshold matter of the burden of proof imposed on the United States. At the hearing, the parties and the Court were unsure of the appropriate burden for (f)(2) cases. Subsequent to the hearing, the United States submitted an e-mail brief to the Court indicating that the appropriate standard of proof was "clear and convincing evidence." Counsel for Defendant also agreed with the United States. Having reviewed the authorities submitted by the United States, the Court concurs and agrees that the "clear and convincing evidence" standard applies. *See, e.g., United States v. Smiley,* No. 3:19-CR-00752-RAM, 2019 WL 6529395, at *2 (D. P.R. Dec. 4, 2019)(noting that clear and convincing evidence standard applies to whether a defendant poses a danger to a prospective witness or juror ); *United States v. Dodge,* 842 F. Supp. 643, 645-466 (D. Conn. 1994)(finding that government must sustain its burden of proof by clear and convincing evidence in cases where detention is sought due to obstruction or danger to witnesses or jurors).

II.    **Evidence Presented and Factors Considered**

The United States presented compelling evidence which touched on a number of factors relevant to the Court's consideration. The United States presented four exhibits which demonstrated the nature and circumstances of the instant offense, the weight of the evidence against the Defendant, and the danger presented by Defendant to potential witnesses. Counts One through Six charged Defendant with two counts of Wire Fraud

and four counts of Interstate Communications with the Intent to Extort. The exhibits presented by the United States involved a number of threatening text messages purportedly sent from the Defendant to victim/witness, K.G. The following are examples of the threatening language purportedly used by the Defendant:

- If you want to do the right thing . . . . make THIS right . . . . and calm the murderous rage I have growing inside GIVE ME MY MONEY BACK!!! (Govt.'s Exh. 1);
- . . . if you say sometime [sic] to piss me off . . . all loyalty is out the window and ill [sic] come find you and end you . . . (Govt.'s Exh. 2).
- If you do not give me my money back I gave you in my account and we lose all that money . . . . anybody related to you . . . work with you . . . friends with you . . . lives with you . . . knows you . . . etc will pay the consequences of you fucking me . . . . . . then and only then when they think you have experienced enough loss and pain will they look for you!!!!! (Govt.'s Exh. 3).

The United States also presented another text with a picture of a vehicle that had turned over in an apparent crash. The following text message accompanied the picture: "[h]eres [sic] a lil [sic] hint for you!!!! . . . . and remember our talk keep your mouth quiet !!! here on out . . . . ." (Govt.'s Exh. 4). The United States additionally presented evidence of a written investigative memorandum of a telephonically recorded phone call between witness K.G. and the Defendant, which occurred on October 17, 2020. (Govt.'s Exh. 20). K.G. talked to the Defendant about the alleged continuing extortion scheme with K.G. asking if the Defendant was currently upset with him. *Id.* The Defendant indicated that he was not upset with him, but told K.G. that when he gets upset, people die. *Id.* The

aforementioned exhibits clearly illustrate the danger posed by the Defendant to witness K.G., who is the purported victim in Counts One through Six of the Indictment. Said evidence also illustrates the strength of the Government's case against the Defendant for those counts.

To further buttress its argument regarding the danger posed by the Defendant, the United States presented evidence of ex parte orders of protections sought by various individuals in the Circuit Court of St. Clair County. (Govt.'s Exh. 14-19). The allegations made by these individuals are not connected to the instant indictment against the Defendant, but they do illustrate a consistent pattern of threats made by the Defendant. For example, one petitioner alleged that the Defendant threatened to blow up the petitioner and her children over some money that was apparently owed to the Defendant. (Govt.'s Exh. 17). An additional petitioner alleged that the Defendant showed up at his place of employment and threatened to hunt him and his family down and cause them bodily harm if the petitioner did not pay the Defendant the money that was owed to him. (Govt.'s Exh. 14). Another petitioner alleged that the Defendant warned him not to say anything about the Defendant to the court system. (Govt.'s Exh. 18). The petitioner further alleged that his son had come home with some marks on him, apparently inflicted on him by the Defendant as a warning to the petitioner. *Id.* Finally, a different petitioner alleged that while he was at court, the Defendant threatened his life, saying "I will forgive you after I kill your ass." (Govt.'s Exh. 19).

The United States did not present evidence of whether these petitions resulted in full orders of protections being issued. And, Defense counsel properly pointed out that

these petitions merely represented allegations. Nevertheless, these allegations paint a consistent narrative of the Defendant making threats to accomplish his various aims, which usually involved obtaining money. This is also remarkably similar to the allegations presented by the United States in the indictment. Thus, these allegations do appear to have an indicia of reliability, especially given the fact that these petitions were made under oath and under penalty of perjury.

Of additional concern to the Court is the fact that some of the Defendant's alleged threats came in the context of court proceedings or anticipated court appearances. *See* (Govt.'s Exh. 18, 19). The fact that the Defendant allegedly threatened an individual while at court (Govt.'s Exh. 19) shows that the existence of legal proceedings will apparently not deter the Defendant from making such threats. The fact that the Defendant allegedly made threats to prevent someone from talking to the Court (Govt.'s Exh. 18) similarly demonstrates a willingness to engage in obstructionist behavior. Thus, it is clear from the evidence presented by the Government that the Defendant poses a serious risk of obstruction and danger to potential witnesses.

As mentioned earlier, the Government's case against the Defendant appears to be strong. The United States presented additional exhibits for the other counts in the indictment, such as the health care fraud and money laundering counts. *See, e.g.,* (Govt.'s Exh. 5-7, 8-13, 21). These exhibits further underscore the strength of the Government's case against the Defendant, which is a factor cutting in favor of detention.

The Defendant's criminal history is yet another factor militating in favor of detention. Defense counsel correctly pointed out that the Defendant's criminal history

was not particularly violent. Indeed, the Defendant's prior convictions that the Court found to be crimes of violence occurred in the mid 80's and 90's. However, the Defendant's criminal history is still quite lengthy and consists of many theft and forgery convictions. Despite having served significant time in prison for these fraud offenses, it appears it did not dissuade the Defendant from apparently engaging in the conduct for which he is currently charged. Thus, the Defendant presents a danger to the community if he is released – a danger represented by the possibility of the Defendant committing other fraud related crimes.

The Court also rejects Defense counsel's arguments that conditions could be imposed to alleviate these danger concerns. In reviewing the allegations in the indictment, Defendant has allegedly engaged in a wide-ranging scheme that has purportedly defrauded victims of nearly 2 million dollars. Even if the Court were to impose the most stringent conditions, *e.g.*, home detention/home incarceration, electronic monitoring, etc., the Defendant still has the ability to concoct schemes in order to commit fraud related crimes or threaten witnesses. Furthermore, the Court is not convinced that the Defendant would abide by any such conditions if imposed. For example, the United States presented evidence of the fact that the Defendant was under a restitution order arising out of a previous fraud case in Illinois state court. The order required the Defendant to pay back more than $100,000. Evidence was also presented that showed that the Defendant received significant amounts of money that would have allowed him to pay back the money owed. In fact, the Defendant received more than

$470,000 (Govt.'s Exh. 13) from a purported settlement, but did not use any of it to satisfy his obligations under the restitution order.

Finally, the Defendant's proposed home plan would permit him to go back to the residence that he currently shares with his wife, Matissia Holt.  Based on the allegations presented in the indictment, Co-Defendant Holt was also allegedly involved in many of the schemes concocted by the Defendant.  Because they are married, the Court cannot impose any "no contact" restrictions on the two without violating their constitutional rights.  However, given the Defendant's history and the allegations in the indictment, there is a serious risk that the Defendant may somehow use Co-Defendant Holt to engage in obstruction or otherwise flout any restrictions imposed upon him.

As for any factors that might warrant the Defendant's release, Defense counsel did present evidence of the Defendant having serious health issues.  For example, the Defendant was apparently run over by a state vehicle in 2010 while he was still serving time in prison.  Defense counsel also proffered evidence of the Defendant having back and spinal injuries for which a surgery was scheduled, but had not yet been done because of the Covid-19 pandemic.  Defense counsel also indicated that the Defendant was wheelchair bound, and the Defendant appeared that way in court for the hearing.  However, the Government also presented video evidence of the Defendant dancing, traveling and attending football games, carrying heavy items, driving and attending medical appointments, and walking around regularly albeit with a slight limp.  Upon questioning by the Court, the Government also indicated that the Defendant was not in a wheelchair when he was arrested, but that one was found in the house.  Upon further

questioning from the Court, the Government also noted that none of the Defendant's vehicles were equipped to handle wheelchairs, which calls into question the Defendant's consistent need for one.  Although Defendant's health is a concern for the Court and does cut in favor of Defendant's release, the Marshal's service and the local jail can still provide appropriate medical care to the Defendant as needed.  As such, even when weighing the Defendant's health issues against the potential danger posed by the Defendant, the Court still believes that detention is warranted.

## Conclusion

In light of the above, the Court concludes that the United States has met its burden of proof by clear and convincing evidence that the Defendant poses a danger to the community, that the Defendant poses a serious risk of danger to potential witnesses as well as a serious risk of obstruction, and that there are no conditions or combination of conditions that could be imposed to alleviate those concerns.

The Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The Defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

**Dated: December 15, 2020.**

_____
GILBERT C. SISON
United States Magistrate Judge

Digitally signed by Judge Sison 2
Date: 2020.12.15 08:47:17 -06'00'