**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| | ) No. 20-CR-30166-SPM |
| **v.** | ) |
| | ) |
| **EMMITT T. TINER,** | ) |
| **Defendant.** | ) |

**MOTION TO REVOKE DETENTION ORDER**

Defendant Emmitt Tiner ("Tiner"), by and through undersigned counsel, William S. Margulis and the law firm of Margulis Gelfand, LLC, hereby moves this Court pursuant to 18 U.S.C. § 1345(b), to: (1) revoke the detention order issued by the Magistrate Judge; and (2) release Tiner on bail with a combination of conditions of release that will reasonably assure his appearance at trial and the safety of the community and potential witnesses.

**I.      Procedural Background**

The indictment in this case was returned on November 18, 2020. The indictment contains 54 counts and charges the defendants with Extortion (18 U.S.C. § 1951), Interstate Communications with Intent to Extort (18 U.S.C. § 875(b)), Wire Fraud (18 U.S.C. § 1343), Mail Fraud (18 U.S.C. § 1341), Health Care Fraud (18 U.S.C. § 1347), Money Laundering (18 U.S.C. § 1956(a)(1)(B)(i)), Monetary Transactions in Criminally Derived Property (18 U.S.C. § 1957), Aggravated Identity Theft (18 U.S.C. § 1028A), Material Misstatement of Fact to a Domestic Financial Institution (31 U.S.C. § 5324(a)(2)), Unlawful Use of a Social Security Number of Another Person (42 U.S.C. § 408(a)(8)), and False Representation of a Social Security Number (42 U.S.C. § 408(a)(7)(B)). The indictment also seeks forfeiture of property traceable to the proceeds of these alleged criminal violations.

Tiner was arrested on November 19, 2020 at his residence in O'Fallon, Illinois, located within the Southern District of Illinois. Magistrate Judge Gilbert C. Sison conducted a detention hearing on November 25, 2020. After the hearing, at which both the Government and the defense proffered evidence, Judge Sison granted the Government's motion to detain Tiner. (*See* Doc. 33).

Judge Sison made a finding that no rebuttable presumption of detention applied, but that the Government was seeking detention pursuant to 18 U.S.C. § 3142(f)(2)(B) on the grounds that Tiner presented a serious risk that he would obstruct (or attempt to obstruct) justice, or threaten, injure, or intimidate, (or attempt to threaten, injure, or intimidate) a prospective witness or juror; and pursuant to 18 U.S.C. § 3142(f)(1) on the grounds that Tiner is a flight risk and a danger to the community. (*Id.*). The Court rejected the Government's argument that Tiner posed a risk of flight or non-appearance as a basis for detention. (*Id.* at n.1).

**II.     Applicable Law**

The Bail Reform Act (hereinafter, the "Act") preserves the preference of release of the accused pending trial. *See United States v. Salerno*, 481 U.S. 739, 755 (1987). Liberty is the norm, and detention prior to trial is "the carefully limited exception." *Id.* As the Seventh Circuit has explained, "[t]he Bail Reform Act...requires the judge to consider the possibility of less restrictive alternatives to detention[.]" *United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991).

Under the Act, the judicial officer "shall order the defendant detained if no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community." *United States v. Monfre*, No. 09-CR-30075MJR, 2009 WL 1904417, at *1 (S.D. Ill. July 1, 2009) (citing 18 U.S.C. § 3142(e)). "The Supreme Court has held that Congress did not intend pretrial detention to be punitive." *Id.* (citing *Salerno*, 481 U.S. at 747).

The Eighth Circuit has noted:

> The passage of the pretrial detention provision of the 1984 Act did not...signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial. Rather, Congress was demonstrating its concern about "a small but identifiable group of particularly dangerous defendants as to whom neither the impostion [*sic*] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.

*United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* 1984 Code Cong. & Ad. News at 3189).

Consistent with the intent of Congress, the Act encourages release of the accused pending trial so long as some condition or combination of conditions can reasonably assure the appearance of the accused at trial and the safety of the community or any other person. *Id.* at 890-91. "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* at 891.

To further this end, the Act provides for a pretrial detention hearing specifically to "determine whether there are conditions of release that can reasonably assure the appearance of a defendant at trial and, at the same time, preserve the safety of the community." *United States v. Warneke*, 199 F.3d 906, 908 (7th Cir. 1999). Moreover, "[d]oubts regarding the propriety of release are to be resolved in favor of defendants." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

Section 3142(g) of the Act sets forth factors for the judicial officer to consider in determining whether to release a defendant. "These factors *must* be considered whenever release is sought." *Monfre*, 2009 WL 1904417 at *2. The factors are as follows:

(1) The nature and circumstances of the offense charged;

(2) The weight of the evidence against the defendant;

(3) The history and characteristics of the person, including -

　　(A) the person's character, physical and mental condition, family ties,

3

employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, state or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* (citing 18 U.S.C. § 3142(g)). The Seventh Circuit has instructed that the district court may not disregard any of these factors. *See United States v. Torres*, 929 F.2d 291 (7th Cir. 1991).

### III. Tiner Does Not Pose a Danger to Any Other Person or the Community

Tiner does not pose a danger to the community or a serious risk of danger to potential witnesses or a risk of obstruction against which no conditions or a combination of conditions of release can reasonably assure.

Magistrate Judge Sison concluded that the Government met its burden of proof by clear and convincing evidence that Tiner poses a danger to the community, that Tiner poses a serious risk of danger to potential witnesses, as well as a serious risk of obstruction, and that pretrial detention is warranted and that there are no conditions or combination of conditions that could be imposed to alleviate those concerns. (*See* Doc. 33). Judge Sison noted his reasons for detention include: text messages purportedly sent to witness K.G. by Tiner illustrate that he poses a danger to witness K.G.; exhibits offered by the Government regarding Ex Parte Orders of Protection sought by various individuals unrelated to this case against Tiner; the strength of the Government's case against Tiner; and Tiner's criminal history. (*Id.*).

These reasons do not provide clear and convincing evidence that Tiner poses a danger to the community or any other person and that no combination of conditions of release can reasonably

4

assure the safety of the community. The "'clear and convincing standard' set forth in Section 3142(f) requires from the fact finder a high degree of certainty that the information presented supports the conclusion of dangerousness[.]" *United States v. Acevedo-Ramos*, 600 F. Supp. 501, 509 (D.P.R. 1984), *aff'd,* 755 F.2d 203 (1st Cir. 1985).

Judge Sison made a finding that certain text messages that Tiner allegedly sent to witness K.G. (an alleged victim in this case) illustrate that Tiner poses a danger to K.G. The indictment in this case was filed on November 18, 2020, Tiner was arrested on November 19, 2020, and the detention hearing was held on November 25, 2020. The four text messages that the Government presented at the detention hearing and that the Court relied on in making its finding are all dated in September and October 2017—more than three years prior to the Indictment and detention hearing. No evidence was presented—and K.G. did not testify at the hearing—that Tiner ever acted on any of these threats or that K.G. was actually afraid of or fearful of Tiner. The only other evidence presented at the hearing relevant to this issue was that Tiner allegedly threatened K.G. during a meeting on October 17, 2020. The evidence was presented through a Memorandum of Interview written by an IRS special agent. No other evidence was presented by the Government that Tiner had threatened anyone during the last three years. These alleged threats by Tiner also all occurred before K.G. was ever identified as a witness against him. This evidence falls far short of establishing, as it must, "a high degree of certainty" that Tiner is dangerous.

Judge Sison also found that evidence presented by the Government concerning Ex Parte Orders of Protection sought by certain individuals in the Circuit Court of St. Clair County, Illinois buttressed its argument that Tiner is dangerous. The Government presented six exhibits at the hearing of Ex Parte Orders of Protection that certain individuals had sought against Tiner. (*See* Exh. 14-19). However, none of these individuals have any relationship or connection to the instant

Indictment and all of these orders of protection were obtained between 2015 and 2017—4-6 years before this Indictment and the detention hearing held in this matter. Again, this evidence hardly exhibits "clear and convincing evidence" that Tiner currently poses any danger to anyone. An Ex Parte Order of Protection is, by definition, an Order obtained by an individual premised solely on allegations prior to a hearing at which the veracity of the allegations can be assessed. The Government presented no evidence that any hearing on any of the Ex Parte Orders of Protection was ever held, nor did the Government present any evidence that a permanent order of protection was ever entered in any of the matters. In fact, upon further research, with respect to the Ex Parte Orders of Protection that were presented by the Government as Exhibits 15, 16, 17, 18, and 19, full orders of protection were denied by the trial court on various dates in 2016 and 2017. The temporary order of protection in Government Exhibit 14 expired on April 15, 2015, almost six (6) years ago, with no permanent order ever issued. (*See* Defendant's Exhibit 1). This lends further credence to the unreliable nature of the allegations made in the Ex Parte Orders of Protection, and the Court should not even take these into account in considering the issue of Defendant's potential danger to the community or witnesses in this case. There is also no evidence that Tiner ever violated any of these Orders which clearly demonstrates that he is readily willing to follow and abide by the terms of Court orders.

  Judge Sison made a finding that the Government's case appears to be strong based on the Government's presentation of exhibits related to the health care fraud and money laundering counts. The Court found that these exhibits supported the strength of the Government's case, which is a factor cutting in favor of detention. (*See* Doc. 33). However, accepting solely for the sake of argument that the Government's case is strong, this necessarily serves only as a basis to conclude that Tiner presents a risk of flight—the strength of the case against him has absolutely no bearing

on whether Tiner presents a danger to the community or any individual. The Court correctly concluded that Tiner does not pose a risk of flight or non-appearance and this does not support a conclusion of dangerousness.

Judge Sison made a further finding that Tiner's criminal history is another factor in support of detention (*Id.*). Although Tiner has a criminal history, the majority of his history involves crimes of fraud, theft, and deceptive practices. Any charges for violent offenses were either dismissed and/or date back to the 1980's and 1990's. Tiner's criminal history lends no support to a conclusion that he presently poses any danger to the community.

Neither alone, nor in the aggregate, do the reasons noted by the Magistrate provide clear and convincing evidence, or a high degree of certainty, that Tiner poses a danger to the community or potential witnesses.

None of the allegations against Tiner involve physical violence nor are they controlled substances offenses. Tiner is 53 years old and, prior to his arrest, he was residing at 210 Knollhaven Trail in O'Fallon, Illinois with his spouse and their two-year-old child, as well as two other minor children of Tiner's spouse. Tiner also has four other children, three of whom are adults and a 17-year-old who resides with his mother in Aurora, Illinois. Tiner has lived within the Southern District of Illinois—specifically in the Belleville and O'Fallon areas—for approximately 10 years and his ties to the community run deep. Tiner's criminal history largely consists of theft, fraud, and deceptive practice charges. The only allegations of violence involving Tiner occurred more than 20 years ago when he was in his late teens and twenties. He has no new convictions since 2010 when he was released from prison after completing a state sentence for theft and forgery.

### IV.   Tiner's Health, the Ongoing Pandemic, and the Ability to Assist in His Defense

Tiner has significant medical needs, requiring constant attention and medication, that

cannot satisfactorily be met in the St. Clair County Jail or, for that matter, any jail. In 2010, Tiner suffered severe injuries when he was run over by a vehicle. As a result of the accident, Tiner suffered severe back and spinal injuries that have resulted in multiple surgeries. He has a device surgically placed inside his body that helps to release pressure on his spinal injuries. This device needs to be regularly maintained and recalibrated. Tiner was also scheduled, prior to imprisonment, for a surgical procedure to release pressure on his back. This surgery, although postponed, remains necessary. In addition, Tiner also suffers from a heart condition and high blood pressure. These medical conditions require Tiner to take ten daily medications. These medical conditions, along with Tiner's age, make him more susceptible to COVID-19 and from suffering serious complications if he contracts it.

As it stands, COVID-19 is ravaging jails and prisons across the country. According to the CDC, there have been 395,094 total cases of COVID-19 in U.S. Correctional and Detention Facilities as of January 7, 2021 and nearly 2,000 deaths.[1] In Illinois alone, there have been 16,458 reported cases.[2] This is a matter of life and death for Tiner. His age and underlying health conditions put him at serious risks should he contract this terrible illness.

Some of the largest outbreaks have occurred in the nation's prisons and for obvious reason: inmates "live in crowded conditions, sharing bathrooms and eating facilities where social distancing is impossible."[3] Indeed, it is undersigned counsel's understanding based on information provided to him that Tiner is residing in a 17 foot by 12-foot unit that has 8 beds for inmates. However, due to overcrowding, at any given time, there are between 10 and 13 individuals residing in the unit. As it stands, 5 of those individuals have already tested positive for COVID-19 and were

---

[1] https://covid.cdc.gov/covid-data-tracker/#correctional-facilities (last visited January 7, 2021).
[2] *Id.*
[3] https://www.nytimes.com/2020/11/30/health/coronavirus-vaccine-prisons.html (last visited January 7, 2021).

not removed from the unit when the diagnosis came in. In the St. Clair County Jail, two entire units have been closed down and large swaths of the jail population are in quarantine. Inmates are not being provided with masks as these purportedly pose some sort of "security threat."

In addition to his utter lack of dangerousness, Tiner's health and the ongoing pandemic warrant his release on bond pending trial. Tiner is requesting that he be released on an unsecured bond to reside at 210 Knollhaven Trail in O'Fallon, Illinois with his wife and their minor child. Tiner will submit to home detention with electronic GPS monitoring and any other condition imposed by this Court. Tiner will only leave his residence for court, legal visits, doctor appointments, or other approved activity by his pretrial officer. Tiner has no passport and has never travelled outside the United States.

Tiner will have no contact with any potential witness and he will not access any social media accounts. Tiner agrees to any limits of access or controls to any electronic devices, such as cell phones and computers, placed by the Court or Pretrial Services. Tiner will submit to random searches of his person, residence, computer, and cell phone. And he will submit to any other conditions of release the Court deems appropriate. Tiner understands that if he violates any terms and conditions of his pretrial release, that his bond will be immediately revoked.

Another factor that warrants pretrial release in this matter is the complexity of the case and the voluminous nature of the discovery. It is Tiner's understanding that approximately 84 grand jury subpoenas were issued during the course of the investigation in this case. There were also additional records obtained by the Government. Five search warrants were executed in the course of the investigation as well. There are also several hours of audio and video recordings. As of the date of the filing of this motion, undersigned counsel has received a portion of the discovery, but based on conversations with counsel for the Government, there is substantially more discovery

that will be produced in the coming days and weeks.

Due to COVID-19 and the restrictions at the Jail on visitation and the volume of discovery in this case, it will be extremely difficult for Tiner to meaningfully assist in his own defense—as the Constitution requires—if he is required to remain incarcerated pending trial.

## V.     Conclusion

Because the Bail Reform Act requires the Court to consider the possibility of less restrictive alternatives to detention and because Tiner has proposed less restrictive alternatives, Tiner respectfully requests that this Honorable Court revoke the detention order of the Magistrate Judge and, pursuant to 18 U.S.C. § 3145(b), release him on bail subject to a combination of conditions of release or, in the alternative, schedule an evidentiary hearing at which he may present argument as to available conditions of release that will reasonably assure the safety of the community and witnesses.

Respectfully submitted,

**Margulis Gelfand, LLC**

 */s/ William S. Margulis*
WILLIAM S. MARGULIS, #6205728
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
bill@margulisgelfand.com
ATTORNEY FOR DEFENDANT

## Certificate of Service

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

*/s/ William S. Margulis*
WILLIAM S. MARGULIS, #6205728
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
bill@margulisgelfand.com
ATTORNEY FOR DEFENDANT