IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

EMMITT T. TINER,

     Defendant.

Case No. 20-CR-30166-SPM-1

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss filed by Defendant Emmitt T. Tiner, in which he requests dismissal of the indictment or disqualification of the prosecution team (Doc. 98). The Government filed its Response to Tiner's Motion (Doc. 109) and Tiner filed a Reply (Doc. 118). For the reasons set forth below, the motion is denied.

## BACKGROUND

In November 2020, a grand jury returned a fifty-four-count indictment against Defendant Emmitt T. Tiner charging him with wire fraud, interstate communication with intent to extort, mail fraud, extortion, health care fraud, material misstatement of fact to a domestic financial institution, use of a social security number of another person in violation of law, false representation of a social security number, aggravated identity theft, money laundering, and monetary transaction in criminally derived property (Doc. 1). Tiner is currently in custody at the St. Clair County Jail awaiting trial. Tiner alleges that the Government obtained, possessed, listened to,

and disseminated confidential telephone calls from Tiner to his attorney placed from the jail in violation of the attorney-client privilege (*Id.*).

A simple set of facts easily resolves the issues in this Motion. Inmates at the jail receive a paper copy of rules and regulations during initial processing, which, in relevant part, states:

> Telephones are located in each of the housing units. They are for your convenience and to be shared equally. Monopolizing the telephones by any persons or group of persons or damaging the phone will result in disciplinary action. Phones are turned on at 8:00 a.m. and off at 10:00 p.m. daily. All outgoing phone calls are subject to **recording and monitoring**.

(Doc. 109-3, p. 2; Def's Ex. D). Additionally, before using these public telephones, inmates are warned that the call is "subject to recording and monitoring" in a recorded preamble (Doc. 109-3, p. 2; Doc. 125, pp. 24, 61–62). Jail staff testified that, while not specifically stated in the rules and regulations, if an inmate wants to have a private conversation with their attorney at the jail, they can call their attorney on the unsecured telephone line and arrange for the attorney to visit the jail, call in to the confidential telephone line, or meet virtually through an iPad (Doc. 109, p. 4–5; Doc. 125, pp. 65, 77, 88, 92). The inmate is taken to a private room during these meetings (Doc. 125, p. 90). Tiner and his attorney used the private room for in-person visits, confidential telephone calls, and virtual meetings via an iPad (Doc. 109-2, pp. 2, 7–23; Doc. 125 p. 92).

Because of concern over Tiner potentially threatening victims from jail, an agent assigned to the case requested the jail to pull Tiner's monitored telephone calls from November 19, 2020, when Tiner was arrested, to December 15, 2020 (Doc. 6;

Doc. 109-1; Doc. 109-4, p. 1; Doc. 109-6, pp. 6–7; Doc. 125, p. 8).[1] The agent and a filter attorney, who is not associated with the prosecution, made efforts to shield the non-private attorney-client telephone calls in that batch of calls by compiling a contact log (Doc. 109-4, p. 2; Doc. 109-6, pp. 1–2, 6–7). During discovery, one of the Government prosecutors took possession of the calls for discovery production purposes and listened to three of the attorney-client calls, though he swore in an affidavit that it was only briefly before closing the files once he realized Tiner was talking to his attorney (Doc. 109-5). The Government produced those calls to Tiner's attorney and Defendant Matissia Holt's attorney under Federal Rule of Criminal Procedure 16(B)(i) (*Id.*). In the letter accompanying the disclosures, the Government noted that it listened to the calls briefly (*Id.* at 9–10).

## ANALYSIS

The Court disagrees that Tiner's attorney-client communications over recorded prison telephone lines are privileged. The attorney-client privilege does not protect all communications made between an attorney and his client. As the Seventh Circuit has explained, the attorney-client privilege protects communications so long as the communication is "made in confidence . . . by the client." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, *Evidence in Trials*

---

[1] An inmate or attorney can request that the jail make an attorney's phone number "private," which shields outgoing calls to the attorney from monitoring and recording on the public telephones. Tiner wrote a request that the jail make his calls to the attorney's phone number "private" on December 1, 2022 (Doc. 109-3, p. 10). According to a jail employee, Tiner verbally asked him to make his attorney's phone number "private" before this letter, and the employee told him to make the request electronically or in writing (Doc. 125, p. 105). Tiner made another written request on September 15, 2021 (Def's Ex. G). The Court notes that these calls from the public telephones are still made in the public spaces of the jail and are, therefore, not confidential for the reasons stated below.

*at Common Law* § 2292 (John T. Naughton rev. 1961)). While the Seventh Circuit has not addressed the issue of whether the attorney-client privilege protects recorded prison telephone calls directly, the Court has held that an expectation of privacy in prisoner or detainee recorded phone calls is unreasonable. *See United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989) ("We believe that it was unreasonable for her to expect that telephone calls she placed to an inmate in a high-security federal penitentiary would be private.") The Court has also held that the otherwise applicable marital communication privilege does not apply during recorded prison calls due to the lack of confidentiality that is inherent in such communications. *See United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998). Additionally, several district courts in this Circuit have held that attorney-client communications are not privileged when the inmate knew their conversations were being recorded and had no reasonable expectation of confidentiality. *See Pursley v. City of Rockford,* 2020 WL 1433827, at *4 (N.D. Ill. Mar. 24, 2020); *see also Simon v. Northwestern Univ.,* 2017 WL 66818, at *5 (N.D. Ill. Jan. 6, 2017); *United States v. Thompson*, 2007 WL 2700016, at *2 (C.D. Ill. 2007). Other circuit courts agree. *See United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) ("[W]here an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege."); *see also United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003) ("The presence of the prison recording device destroyed the attorney-client privilege. Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private.").

Tiner complains of the procedures for visits and confidential telephone calls

Page 4 of 6

with his attorney. Yet the fact that an unrecorded and unmonitored confidential conversation was more difficult for Tiner to arrange does not mean he lacked access confidential discussions, or that he faced an insurmountable impediment. Nor does Tiner address the fact that in-person, confidential visits, confidential telephone calls, and confidential virtual meetings with his attorney were available upon request, and both he and his attorney took advantage of these options. To be sure, the system at the jail could use improvement, including more staff dedicated to facilitating confidential communications with attorneys for the 500 inmates at the jail and an extra private phone line for that purpose. That said, based on the facts, the Court agrees with the Government that the attorney-client privilege does not protect Tiner's choice to speak to his attorneys on the telephone knowing that the calls were being recorded and monitored simply because it was more convenient than adhering to the process for scheduling a confidential discussion. *See Pursley*, 2020 WL 1433827, at *5.

From here, the Motion unravels with a little superficial poking and prodding. Since the calls were not protected, disclosure during discovery to Holt's attorney is not an issue.[2] The Government's disclosure of visitation logs was also not violative of the privilege. The information disclosed was public and akin to a private investigator waiting outside of an attorney's office to monitor the time and date of a person's discussions with an attorney. Furthermore, Tiner opened the door to the Government proffering the information to the Court by making the calls an issue in the first place.

---

[2] For the sake of argument, though, the Court also points out that Holt and her attorney both swore in affidavits that they did not listen to the calls in question (Docs. 109-8, 109-9).

CONCLUSION

The Court will not dismiss the indictment or disqualify the prosecution team because, while the filtering protocol failed, the attorney-client privilege does not apply to the telephone calls. Accordingly, the Motion to Dismiss (Doc. 98) filed by Defendant Emmitt T. Tiner is **DENIED**.

**IT IS SO ORDERED.**

DATED:   April 29, 2022

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**